**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

BRIANNA P.,

                           Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

No. 3:24-CV-301
(PJE)

———————————————————————

**APPEARANCES:**

Lachman, Gorton Law Firm
P.O. Box 89
1500 East Main Street
Endicott, New York 13760
Attorneys for plaintiff

**OF COUNSEL:**

PETER A. GORTON, ESQ.

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

KRISTINA D. COHN, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Brianna P.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) seeking review of a decision by the Commissioner of the Social

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18. *See* Dkt. No. 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

Security Administration ("the Commissioner") denying her application for supplemental security income ("SSI").  *See* Dkt. No. 1.  Plaintiff moved for the Commissioner's decision to be vacated and remanded for the calculation of benefits, or in the alternative, for further proceedings.  *See* Dkt. No. 9.  The Commissioner moved for the decision to be affirmed. *See* Dkt. No. 21.[3]  Plaintiff filed a reply.  *See* Dkt. No. 13.  For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I.  Background

On September 7, 2021, plaintiff filed Title II and Title XVI applications for a period of disability, disability insurance benefits ("DIB"), and SSI benefits, alleging a disability onset date of June 13, 2020.  *See* T. at 14, 252-58.[4]  On November 17, 2021, the Social Security Administration ("SSA") denied plaintiff's claim.  *See id.* at 156-65.  Plaintiff sought reconsideration, which the SSA denied on May 24, 2022.  *See id.* at 126-55, 171-74. Plaintiff appealed and requested a hearing.  *See id.* at 175-76, 259.  On May 25, 2023, a hearing was held before Administrative Law Judge ("ALJ") Mary Jane Pelton.  *See id.* at 33-61.  On July 13, 2023, the ALJ issued an unfavorable decision.  *See id.* at 11-32.  On September 8, 2023, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See id.* at 1-6.  Plaintiff commenced the instant action on March 1, 2024.  *See* Dkt. No. 1.

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.
[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refers to the pagination generated by the Court's electronic filing and case management program located at the header of each page.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence."  *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))).  "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotations marks omitted).  "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence."  *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)).  "However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B.  **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id*. § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id*. (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id*. (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id*. (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III.  **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff had "not engaged in substantial gainful activity since June 13, 2020, the alleged onset date." T. at 17. At step two, the ALJ found that plaintiff "has the following severe

impairments: May-Thurner's syndrome, depressive disorder, anxiety disorder, personality disorder, posttraumatic stress disorder, and obesity." *Id*.  At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*.

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can understand, remember, and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant should work in a job with occasional changes in the routine work setting. The claimant cannot perform work requiring a specific production rate or perform work which requires hourly quotas. The claimant could have occasional contact with coworkers, supervisors, and the public.

*Id*. at 19.[5]  At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work." *Id*. at 24.  Before reaching step five, the ALJ noted that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Id*. at 25.  At step five, the ALJ

---

[5] Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from June 13, 2020, through the date of this decision." *Id*. at 26.

## IV. **Discussion**

### A. **The Parties' Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. *See* Dkt. No. 9 at 11-12. More specifically, plaintiff argues that the ALJ's RFC determination relies solely on J. Penny, Psy.D.'s opinion that is not supported by, or consistent with, the other evidence of record. *See id*. at 11-12. Plaintiff asserts that Dr. Penny misstated and cherry-picked evidence to fit her conclusions. *See* Dkt. No. 13 at 2. Plaintiff also asserts that the ALJ's consistency analysis ignores plaintiff's subjective mental health symptoms and mischaracterizes the effects of her medication. *See* Dkt. No. 9 at 12-14. Plaintiff further claims that the ALJ erred by (1) rejecting the opinions of Ruby Phillips, Ph.D., Melissa O'Bannon, PA-C, and Rebecca Golding, ANP, PMHNP; (2) failing to conduct an individualized assessment addressing plaintiff's ability to handle stress in a workplace or work-like environment as SSR 85-15 requires; and (3) relying on I. Seok, M.D. and S. Siddiqui, M.D.'s opinions to conclude that she could stand all day and did not need to change positions or elevate her feet. *See id*. at 14-27. Plaintiff also argues that the ALJ's supportability analysis is not supported by substantial evidence because the ALJ relied on Drs. Seok and Siddiqui's opinions, but Drs. Seok and Siddiqui (1) "did not actually provide medical opinions" addressing whether she can meet the

physical demands of light work; and (2) failed to consider all of her medical conditions, her more severe symptoms documented in 2021, any medical records created after November 2021, and "any of the medical records noting problems with sitting, standing, or walking." *Id*. at 24-25.

The Commissioner argues that the ALJ's decision is supported by substantial evidence. *See* Dkt. No. 11 at 7. The Commissioner contends that the ALJ's mental and physical RFC determinations correctly evaluated the medical source opinion evidence. *See id*. at 8-19. The Commissioner maintains that the ALJ considered plaintiff's subjective reports of her mental health symptoms, ability to handle stress, and activities of daily living ("ADL"). *See id*. at 8, 13-14.

In reply, plaintiff asserts that (1) the Commissioner misstates and misunderstands her arguments; (2) the ALJ did not perform the required SSR 85-15 analysis; and (3) the ALJ did not consider her need to elevate her feet or change positions. *See* Dkt. No. 13 at 1-7. Plaintiff also states that she did not raise the issue of her ADL in her opening brief, but nonetheless, the evidence does not support the Commissioner's claims. *See id*. at 5-6.

B. **RFC**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative

in nature, not medical, and its determination is within the province of the ALJ." *Id*. (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id*. (quoting *Martone*, 70 F. Supp. 2d at 150) (citations omitted).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id*. (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (internal citation omitted)). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore

the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id.* (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (internal quotation marks and citations omitted)).

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMF's are evaluated based on their "persuasiveness." *Id.* In evaluating the "persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M.*

*v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'").  With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted."  *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted).  "However, they must articulate how persuasive they found the medical opinions and PAMFs."  *Id.* (citing 20 C.F.R. § 416.920c(b)).  "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  *Id.* (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021

WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.").

### 1.  **J. Penny, Psy. D.**

As noted, plaintiff argues that Dr. Penny's opinion is not supported by, or consistent with, the other evidence of record because she misstated and cherry-picked evidence to reach her conclusions.  *See* Dkt. No. 9 at 11-12, Dkt. No. 13 at 2.

### a.  **Supportability**

In forming her mental RFC determination, the ALJ relied on state agency medical consultant Dr. Penny's opinion, finding it "persuasive because it is supported by a detailed narrative rationale, which cites supporting objective medical evidence and other evidence from the record[,]" and "consistent with other evidence in the record, including the mental status examinations in record . . . as well as the fact that the claimant's psychological symptoms improved with treatment."  T. at 20-21.  Yet, Dr. Penny's opinion is not supported by the evidence of record for several reasons.

First, Dr. Penny based her opinion, in part, on Rebecca Golding ANP, PMHNP's September 30, 2021, examination report which opined that plaintiff was "neatly dressed, direct eye contact, cooperative, fearful, anxious.  Stable on current medications, limited capacity to tolerate stress due to hearing loss and anxiety."  T. at 103, 122.  In the hearing decision on appeal, the ALJ determined that Dr. Penny's opinion was supported by and

consistent with the "objective medical evidence" and the "other evidence in the record, including the mental status examinations in the record." *Id*. at 20-21.  In support of this conclusion, the ALJ cites to Exhibits 6F, 7F, and 14F.  *See id*.  Exhibits 6F, 7F, and 14F are Ms. Golding's treatment records and examination reports.  Yet, it is unclear how the ALJ concluded that Ms. Golding's opinions supported Dr. Penny's opinion when the ALJ rejected Ms. Golding's findings and opinions later in the July 2023 hearing decision.  *See id*. at 22.

Second, to the extent that Dr. Penny relied on Ms. Golding's September 30, 2021, finding that plaintiff was fearful and anxious, Dr. Penny ignored several significant mental health symptoms in the same evaluation report, including that plaintiff suffered from "social phobia . . . alternating mood shifts, chronic insomnia, OCD [obsessive compulsive disorder] like behaviors, severe panic," "panic attacks when she would consider returning to the work environment," self-harm, and "suicidal ideation when confronted with her limitations."[6]  T. at 1042, 1047; *see id*. at 1040, 1045. It does not appear that Dr. Penny considered these symptoms, and Ms. Golding's September 30, 2021, evaluation report suggests that plaintiff's mental health symptomology extended beyond fear and anxiety.

Third, Dr. Penny failed to reconcile Ms. Golding's opinion that plaintiff's symptoms were "[s]table on current medications" with the qualifier that her symptoms were only stable "when not under increased stress," relying only on the former finding.  T. at 1040. Dr. Penny did not appear to consider plaintiff's reports to Ms. Golding of increased stress due to social phobia and thoughts of returning to the workforce, and that she was unable to complete her high school education due to "social anxiety."  *Id*. at 1045; *see id*. at 1047.

---

[6] The Court acknowledges that plaintiff's medical records state that she "had much fewer episodes of self-injury over the past year (approximately one-two) which were mild."  T. at 1047.

Further, plaintiff's reports to Ms. Golding appear to conflict with Dr. Penny's conclusion that plaintiff was not "significantly limited" in her "ability to interact appropriately with the general public."  *Id*. at 120.  As the ALJ's RFC determination analyzes plaintiff's ability to obtain and maintain employment, Dr. Penny's failure to consider this evidence frustrates the ALJ's supportability assessment.  *See id*. at 20-21; *see also Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).

Dr. Penny also relied on Ruby Phillips, Ph.D.'s October 22, 2021, consultative psychiatric evaluation report which noted that plaintiff "reported normal appetite, difficulty falling asleep, depressive symptomology, denies [suicidal ideation/homicidal ideation]. She also has anxiety related symptoms, no trauma, panic attacks twice a month."  T. at 103, 122.  However, Dr. Penny does not appear to have considered the entirety of Dr. Phillips' report.  Dr. Phillips also noted that plaintiff "is markedly limited in her ability to regulate emotions, control behavior, and maintain well-being."  *Id*. at 669.  Dr. Phillips concluded that "[t]he results of the present evaluation appear to be consistent with psychiatric problems, and these may significantly interfere with the claimant's ability to function on a daily basis."  *Id*. at 670.  Dr. Penny does not reconcile these opinions with her own conclusions that plaintiff had no limitations in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances" or "sustain an ordinary work routine without special supervision."  *Id*. at 100-101, 119.  Accordingly, it is unclear how the ALJ concluded that Dr. Phillips' opinions support Dr. Penny's conclusions.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)).

b.  **Consistency**

The ALJ's conclusion that Dr. Penny's opinion "is consistent with other evidence in the record, including the mental status examinations in the record" is either factually incorrect or unclear at best.  T. at 21.  In support of this conclusion, the ALJ cites to "Exhibits 3F, pages 9-10, 17, 23, 53-54, 90; 5F, pages 10, 13; 6F, page 4; 7F, page 5; 13F, pages 4, 26, 29, 35, 41, 50, 62, 74, 80, 86, 98, 104, 110, 120, 126; 11F, pages 37, 47, 59; 14F, pages 4, 10, 18, 24, 30, 46, 53, 59, 62, 68, 74, 80, 97, 103, 109, 140, 146, 161, 167, 172, 177, 181, 182, 187."  *Id*.

The ALJ correctly notes that Exhibits 3F, pages 9-10, 17, 23, 53-54, 90; 5F, pages 10, 13; and 11F, pages 37, 47, 59, indicate that plaintiff had normal mood, affect, behavior, thought content, and judgment.  *See* T. at 496-97, 504, 510, 540-41, 577, 680, 683, 846, 856, 868.  Yet, Exhibit 3F, pages 8, 16, 22, 52, and 88; Exhibit 5F, pages 9, 13; and Exhibit 11F, pages 35, 45, 57, state that plaintiff continued to suffer from suicidal ideation for which she was prescribed medication.  *See id*. at 495, 503, 509, 539, 575, 844, 854, 866.  Exhibits 6F and 7F are updated psychiatric evaluation reports from Ms. Golding.  *See* T. at 753-58, 760-65.  Exhibits 13F and 14F consist of additional treatment records from Ms. Golding.  *See id*. at 904-1033, 1035-1223.  However, as discussed, the ALJ rejected Ms. Golding's findings as unpersuasive.  *See id*. at 22.

Further, although Dr. Penny lists a few of Ms. Golding's treatment records in recitation of the materials she reviewed, she does not address Ms. Golding's findings as to functional limitations.  *See* T. at 103-04, 121-22.  As part of her "additional explanation," Dr. Penny cites one of Ms. Golding's treatment records stating, "Rebecca Golding MD: 9/30/21 MSE: neatly dressed, direct eye contact, cooperative, fearful, anxious.  Stable on current medications, limited capacity to tolerate stress due to hearing loss and anxiety."

*Id.* at 103, 122.  It is unclear how Ms. Golding's findings are consistent with Dr. Penny's when Dr. Penny cites one of Ms. Golding's treatment notes, does not discuss Ms. Golding's opinions on functional limitations, and her findings as to plaintiff's functional limitations are significantly less restrictive than Ms. Golding's.  *See id.* at 22.

The Court concludes that because Dr. Penny appears to have ignored medical records suggesting more significant mental health symptomology, and the ALJ relied on Dr. Penny's opinions to reach her RFC determination, the ALJ's treatment of the evidence amounts to impermissible cherry-picking.  Thus, the ALJ's consistency analysis does not satisfy 20 C.F.R. § 404.1520c as the ALJ did not adequately compare Dr. Penny's opinion to the other evidence of record.  *See* 20 C.F.R. § 404.1520c(c)(2); *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *14 (S.D.N.Y. Aug. 6, 2021) ("Such cherry-picking, without proper analysis of the supportability and consistency factors, is ground for remand.") (citing *Jones v. Saul*, No. 19-CV-5542 (LGS/BCM), 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *report and recommendation adopted,* No. 19 CIV. 5542 (LGS), 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not")); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (finding that the ALJ's improper articulation of the supportability and consistency factors is harmful error where the ALJ "selectively relied on portions of the record that showed improvement."); *Lawrence K. v. Comm'r of Soc. Sec.*, No. 5:23-CV-496 (DNH/CFH), 2024 WL 4133823, at *5 (N.D.N.Y. July 10, 2024), *report and recommendation adopted,* No. 5:23-CV-496, 2024 WL 3823486 (N.D.N.Y. Aug. 15, 2024)

(*Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (citing *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *27 (S.D.N.Y. Sept. 24, 2021) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his [or her] RFC determination while ignoring other evidence to the contrary.");

Remand is required to correct these errors and for the ALJ to reevaluate whether Dr. Penny's opinion is supported by, and consistent with, the other evidence of record. *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Prieto*, 2021 WL 3475625, at *14; *Lawrence K.*, 2024 WL 4133823, at *5; 20 C.F.R. §§ 416.920c(c)(1)-(2); *Kathleen A.*, 2022 WL 673824, at *4-5 (first quoting *Carmen M*, 2021 WL 5410550, at *4; then quoting 20 C.F.R. § 404.1520c(c)(2); then citing *Galo G.*, 2021 WL 5232722, at *4).

## 2.  **Rebecca Golding, ANP, PMHNP**

Plaintiff argues that in rejecting Ms. Golding's opinions, the ALJ erred because she misinterpreted and failed to consider all of the evidence relating to plaintiff's symptomology, medication side effects, and social interactions.  *See* Dkt. No. 9 at 15-19. The ALJ concluded that Ms. Golding's opinions were unpersuasive because "the significant physical and mental limitations they identified are not supported or consistent with the objective evidence in record."  T. at 21.  In support of this conclusion, the ALJ relied on Ms. Golding's notation that plaintiff's "functioning had improved with medication," and Ms. Golding's treatment records stating that plaintiff "denied having any adverse symptoms from her medication and stated that she continued to have positive response to medication (Exhibits 13F, pages 14, 26, 104; 14F, pages 125, 152, 165)."  *Id.* at 22

(citing T. at 917, 929, 1007, 1159, 1186, 1199).  The ALJ also explained that "[t]he mental status examinations from Ms. Golding's office also do not support the 'marked' and 'extreme' limitations she identified (Exhibits 13F, pages 4, 26, 29, 35, 41, 50, 62, 74, 80, 86, 98, 104, 110, 120, 126; 14F, pages 4, 10, 18, 24, 30, 46, 53, 59, 62, 68, 74, 80, 97, 103, 109, 140, 146, 161, 167, 172, 177, 181, 182, 187)."  *Id*.  The treatment records the ALJ cites are dated August 8, 2022, September 12, 2022, September 26, 2022, November 28, 2022, December 12, 2022, and March 13, 2023.  *See id*. at 917, 929, 1007, 1159, 1186, 1199.

However, the treatment records the ALJ cites also reflect continuing mental health struggles.  In August 2022, Ms. Golding noted that plaintiff's symptoms were "unchanged with limited social and interpersonal activities" and plaintiff admitted to "binge eating again" and "continu[ing] to struggle with interpersonal skills."  T. at 1166, 1172.  In September 2022, plaintiff stated that she continued to suffer from anxiety and experienced nightmares triggered by her physical ailments and past abuse.  *See id*. at 1195.  In November 2022, plaintiff "remain[ed] limited in her friendships and ability to engage in activities" and experienced an increase in her OCD symptoms.  *Id*. at 905.  In December 2022, plaintiff reported that her financial difficulties triggered "an episode of rumination which spirals her into feeling badly about herself and quasi-suicidal."  *Id*. at 921.  Further, plaintiff's inability to obtain hearing aids limits her comprehension, which "cause her increased anxiety and when in social situations, can lead to panic attacks."  *Id*. at 936.  In January 2023, plaintiff reported suffering from difficulty sleeping, irritability, and impatience.  *See id*. at 944.  In February 2023, Ms. Golding opined that plaintiff "becomes easily dysregulated and her anxiety leads to irrational thinking."  *Id*. at 977.  In March

2023, plaintiff reported "[o]ngoing interpersonal issues, with some panic and increased anxiety." *Id*. at 1022.  In April 2023, plaintiff stated that she experienced "[s]ome increase in anxiety and depressive symptoms." *Id*. at 1028.

The ALJ's analysis of Ms. Golding's treatment records is inconsistent because the records show that despite being prescribed medication and some records showing a "positive response," within the same period of time, Ms. Golding's records also show that plaintiff continued to suffer from the same or increased mental health symptomology and functional limitations.  T. at 22.  As such, the ALJ's supportability analysis frustrates judicial review and requires further explanation.  *See* Cartwright v. Comm'r of Soc. Sec., No. 19-CV-6543 (FPG), 2020 WL 3263447, at *3 (W.D.N.Y. June 17, 2020) (citing *Arias v. Astrue*, No. 11-CV-1614, 2012 WL 6705873, at *2 (S.D.N.Y. Dec. 21, 2012) ("[W]here there is conflicting evidence, the ALJ must acknowledge the conflict and explain why 'the conflicting [evidence] is being disregarded.'  Because the ALJ did not do so, further administrative proceedings are necessary.").  Remand is required to correct these errors and for the ALJ to reevaluate whether Ms. Golding's opinions are supported by the other evidence of record.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K.*, 2024 WL 4133823, at *5; 20 C.F.R. §§ 416.920c(c)(1); *Kathleen A.*, 2022 WL 673824, at *4 (first quoting *Carmen M*, 2021 WL 5410550, at *4).

### 3.  **Drs. Seok and Siddiqui**

State agency medical consultants Dr. Seok and Dr. Siddiqui opined that plaintiff's "overall[] impairments are non-severe."  T. at 69-70, 81-82, 95-96, 114-15.  The ALJ concluded that Dr. Seok and Dr. Siddiqui's opinions are "somewhat" persuasive and "support a conclusion that the claimant has no physical limitations."  *Id*. at 20.  The ALJ

also determined that plaintiff suffered from "greater limitations for lifting/carrying than Dr. Seok and Dr. Siddiqui identified." *Id*.  In support of her conclusion, the ALJ explained that Dr. Seok and Dr. Siddiqui's opinions were consistent with plaintiff's medical records documenting that she "was no longer taking anti-coagulants for her peripheral arterial disease (Exhibit 15F, page 3)"; had no "abnormal swelling, edema, and/or effusion (See, e.g., Exhibits 5F, pages 7, 10; 6F, page 2; 10F, pages 6, 23; 11F, pages 29, 37, 47, 69; 12F, page 18; 15F, page 3; 18F, page 6)"; and did not "present[] to the hospital on repeat occasions to suggest a return of symptoms." *Id*.  The ALJ also explained that "Dr. Seok's and Dr. Siddiqui's assessments are not consistent with treatment notes documenting ongoing swelling in her left leg as well as a venous duplex ultrasound showing chronic non occlusive deep venous thrombosis (DVT) (Exhibits 9F, page 7; 11F, page 62)." *Id*.

Plaintiff asserts that Dr. Seok and Dr. Siddiqui's opinions of no severe limitations, on which the ALJ based her conclusion that plaintiff could perform light work, are not consistent with the other evidence of record demonstrating that she suffers from physical limitations in her legs and feet.  *See* Dkt. No. 9 at 23.  Plaintiff acknowledges that the ALJ concluded she suffered from limitations in lifting and carrying, but she also contends that the ALJ erred by not finding greater limitations in her ability to sit, stand, and walk, as is demonstrated by her need to elevate her feet and frequently change positions.  *See id*. The Court agrees.

In concluding that Dr. Seok and Dr. Siddiqui's opinions supported a conclusion that plaintiff could perform light work and were consistent with the evidence of record, the ALJ failed to consider many treatment records that indicate that plaintiff had difficulty sitting, standing, and walking, and needed to elevate her feet and frequently change positions.

Plaintiff's treatment records show that on at least ten occasions between June 2021 and January 2023, plaintiff reported that she suffered from pain, numbness, left leg swelling, and that her left leg turned "purplish-red" whenever she attempted to walk or stand.  T. at 502; *see id*. at 494, 496, 500, 771, 779, 871,1050, 1077, 1251.  More specifically, plaintiff suffered from "chronic swelling in left leg" and "sharp pains in her posterior mid[-]thigh down to posterior mid[-]calf."  *Id*. at 871.  Plaintiff explained that she had severely-limited mobility, could not stand or ambulate for more than ten minutes to two hours, had difficulty sitting, and that her leg and ankle pain increased at the end of the day.  *See id*. at 771, 779, 871, 905, 936, 993, 1029, 1050, 1077, 1131, 1143.  Plaintiff also reported that she was instructed to treat her condition with compression therapy, "leg elevation," and walking exercises.  *Id*. at 777.

The ALJ did not address this evidence, and it is unclear why this evidence does not demonstrate that plaintiff suffered from abnormal swelling or edema; had greater limitations sitting, standing, and walking; or that she needed to elevate her feet and frequently change positions.  The Commissioner argues that Dr. Seok and Dr. Siddiqui's "assessments were supported by detailed narrative rationales stating that Plaintiff had a normal gait, normal range of motion throughout the extremities and a left leg deep vein thrombosis ("DVT") that resolved in less than 12 months."  Dkt. No. 11 at 16.  To the extent that the Commissioner is arguing that plaintiff's DVT or leg condition caused her physical limitations, and the resolution of this condition eliminated these issues, this argument is factually incorrect.   Drs. Seok and Siddiqui issued their opinions in October 2021, February 2022, and May 2022, and note that plaintiff's DVT resolved in August 2021.  *See* T. at 69-70, 81-82, 95-96, 114-15.  Yet, plaintiff continued to report that she suffered from

a leg condition and physical limitations relating to her leg condition between September 2022 and January 2023.  *See id*. at 771, 779, 1251.  Further, based on the foregoing, it is unclear how Dr. Seok and Dr. Siddiqui's opinions are consistent with the evidence of record.  The Court determines that the ALJ's conclusions as to plaintiff's physical limitations amount to impermissible cherry-picking and do not satisfy the analysis 20 C.F.R. § 404.1520c(c)(2) requires.  *See* 20 C.F.R. § 404.1520c(c); *Prieto*, 2021 WL 3475625, at *14; *Kathleen A.*, 2022 WL 673824, at *5; *Joseph J. B.*, 2024 WL 4217371, at *8.  Remand is required to correct these errors and for the ALJ to reevaluate whether Dr. Seok and Dr. Siddiqui's opinions are consistent with the other evidence of record.  *See Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *April B.*, 2019 WL 4736243, at *6); *Lawrence K.*, 2024 WL 4133823, at *5; 20 C.F.R. §§ 416.920c(c)(2); *Kathleen A.*, 2022 WL 673824, at *5.

### 4.  **Plaintiff's Additional Arguments**

Because the Court had determined that remand is required, it need not address plaintiff's remaining arguments, which the ALJ may consider on remand.  *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at *3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at *17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency

either way for the reasons already given . . . the Commissioner will have the opportunity on reman to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-CV-606 (JAM), 2019 WL 156934, at *4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

## V. **Conclusion**

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's cross-motion (Dkt. No. 11) is **DENIED**, the Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:   September 25, 2025
        Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge